NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PETER FIGUEROA HERNANDEZ, *Appellant.*

No. 1 CA-CR 24-0608

FILED 07-31-2025

Appeal from the Superior Court in Yuma County
No. S1400CR9320159
The Honorable Darci D. Weede, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Diane L. Hunt
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Vice Chief Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Cynthia J. Bailey joined.

_____

**W E I N Z W E I G**, Vice Chief Judge:

¶1        Peter Figueroa Hernandez appeals from the superior court's order accelerating his restitution payment schedule. Because he shows no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Hernandez pled guilty to sexual assault and kidnapping with a deadly weapon (a knife) in January 1994. He was on parole at the time. The superior court sentenced Hernandez to two consecutive terms of life imprisonment. He was eligible for parole after 50 years. Hernandez was also ordered to pay $4,000 in restitution to the victim "within 60 days after his/her release from prison."

¶3        Twenty-seven years later, in 2021, the State moved to accelerate Hernandez's restitution payments based on a "clerical error" in the restitution schedule, stressing that Hernandez could not be released from prison until 2046 at the earliest. The superior court appointed a probation officer to examine the issue and "make recommendations."

¶4        About three years later, in 2024, the probation officer recommended the Department of Corrections ("DOC") use Hernandez's inmate account to make immediate restitution payments "if funds are available." As a result, the State petitioned "to change the manner in which restitution is paid," arguing the initial restitution schedule failed to comply with A.R.S. § 13-804(E) because the victim would not "promptly receive" restitution. *See* A.R.S. § 13-804(E), (M).

¶5        The State prevailed and Hernandez was ordered to start restitution payments immediately to the victim "in accordance with A.R.S. § 31-230(C), which authorizes the [DOC] to 'withdraw a minimum of twenty percent' and 'up to a maximum of fifty percent' of the monies available in the 'spendable account' of Prisoner Hernandez, each month, to pay the court ordered restitution."

**¶6**        Hernandez timely appealed.

## JURISDICTION

**¶7**        As a preliminary matter, this Court lacks appellate jurisdiction over Hernandez's appeal. Defendants may appeal from an "order made after judgment" only when it affects a "substantial right." A.R.S. § 13-4033(A)(3). The order at issue here does not affect a substantial right because it modifies only Hernandez's restitution payment schedule, not the amount of restitution owed. *See State v. Hovey*, 175 Ariz. 219, 220 (App. 1993).

**¶8**        Nonetheless, we exercise our discretion to treat this appeal as a special action and accept jurisdiction because Hernandez would otherwise be deprived of appellate review. *See* A.R.S. § 12-120.21(A)(4); Ariz. R.P. Spec. Act. 11(e) ("If the reviewing court lacks jurisdiction over a direct appeal for reasons other than timeliness, the court may—on a party's request or on its own initiative—treat the appeal as a special action and accept special action jurisdiction consistent with Rule 12."); *see also* Ariz. R.P. Spec. Act. 12(b)(5) (special action jurisdiction is appropriate when a claim "tend[s] to evade review").

## DISCUSSION

**¶9**        Hernandez argues the superior court: (1) lacked jurisdiction to modify his restitution payment schedule, and (2) violated separation of powers. We address each argument in turn.

### I.        Jurisdiction to Modify.

**¶10**        We review questions of statutory interpretation and jurisdiction de novo. *State v. Zaputil*, 220 Ariz. 425, 427, ¶ 7 (App. 2008). When interpreting the constitution or a statute, we aim to "determine the plain meaning of the words the legislature chose to use, viewed in their broader statutory context." *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385, ¶ 11 (2023); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) (courts must interpret a statute's plain language in context because "[c]ontext is a primary determinant of meaning").

**¶11**        Arizona crime victims have a constitutional right "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8). To that end, "the [superior] court shall require the convicted

person to make restitution to the person who is the victim of the crime or to the immediate family of the victim . . . in the full amount of the economic loss as determined by the court and in the manner as determined by the court or the court's designee pursuant to chapter 8 of this title." A.R.S. § 13-603(C).

**¶12** Hernandez first argues the superior court can modify criminal sentences only under Arizona Rules of Criminal Procedure 31 or 24. We are not persuaded because § 13-804(M) authorizes a party to "petition the court at any time to change the manner in which the restitution is paid." What is more, the superior court retains jurisdiction over restitution orders "for purposes of ordering, modifying and enforcing the manner in which payments are made until paid in full." A.R.S. § 13-805(A)(2).

**¶13** Hernandez next contends § 13-804(M) only authorizes modifications to restitution before a final judgment is entered. We disagree. Section 13-804(M) authorizes the parties to petition "*at any time* to change the manner in which the restitution is paid." A.R.S. § 13-804(M) (emphasis added). We decline to limit the plain and ordinary meaning of that language. *See* Scalia & Garner, *supra*, at 69 ("Words are to be understood in their ordinary, everyday meanings."); *Goddard v. Superior Court (Romley)*, 191 Ariz. 402, 404, ¶ 8 (App. 1998). We discern no error.

## II. Separation of Powers.

**¶14** Hernandez next asserts the superior court violated separation of powers when it delegated authority to the DOC to decide the amount and start date of his restitution payments. Not so.

**¶15** The superior court is empowered to impose and modify sentences only "as authorized by statute and within the limits set down by the legislature." *State v. Harris*, 133 Ariz. 30, 31 (App. 1982); *see* A.R.S. § 13-804(M). Those statutes require the court to "specify the manner" of payments when assigning restitution, A.R.S. § 13-804(E), including the amount and start date of payments, *State v. Tietjens*, 151 Ariz. 560, 562 (1986).

**¶16** That happened here. The superior court directed the DOC to start withdrawing restitution payments "in accordance with A.R.S. § 31-230(C)," which designates a specified range of payments to be withdrawn "each month." A.R.S. § 31-230(C).

¶17 Beyond that, the legislature has authorized the DOC in particular to control and regulate inmate accounts, including specific directives "relating to the amounts that must be deducted from each of them and the order in which monies in those accounts must be distributed." *State v. Stocks*, 227 Ariz. 390, 397, ¶ 22 (App. 2011); *see* A.R.S. § 31-254. The superior court properly respected this delegation of authority.

## CONCLUSION

¶18 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR